## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; SONY PICTURES HOME ENTERTAINMENT INC., a Delaware corporation; COLUMBIA PICTURES INDUSTRIES, INC., a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; and TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation, | Civil Action No.: |
| Plaintiffs, | |
| v. | |
| DOES 1 - 29, | |
| Defendants. | |

### DECLARATION OF CHAD TILBURY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

I, Chad Tilbury, declare:

1.      I am Director of Worldwide Internet Enforcement for the Motion Picture Association of America, Inc. ("MPAA"), where I have been employed since July 2004. Prior to the MPAA, I spent five years as a Special Agent in the Air Force Office of Special Investigations where I was responsible for computer investigations and operations. I have an M.S. and a B.S. in Computer Science and have also worked as an Artificial Intelligence researcher and a computer security engineer in the defense industry. I submit this declaration in support of Plaintiffs' Motion for Leave to Take Discovery Prior to Rule 26(f) Conference.

2.      All of the Plaintiffs in this action are motion picture studios and/or distributors, among whom are members, or affiliates or subsidiaries of members, of the MPAA. The MPAA

is a trade association whose members include the largest motion picture studios in the United States. Among other things the MPAA investigates the unauthorized reproduction and distribution of copyrighted motion pictures on behalf of its member companies. As Director of Worldwide Internet Enforcement, I am responsible for coordinating the MPAA's worldwide enforcement effort against internet piracy. This includes supervision of our online copyright infringement campaign, identification and development of Internet anti-piracy technologies, investigations of major online infringers and coordination of Internet anti-piracy efforts around the globe.

3.      This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

## Background

4.      The Internet is a vast collection of interconnected computers and computer networks that communicate with each other. It allows hundreds of millions of people around the world to freely and easily exchange ideas and information, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data. Unfortunately, the Internet also has afforded opportunities for the wide-scale infringement of copyrighted motion pictures. Once a motion picture has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.

5.      To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called "peer-to-peer" ("P2P") networks. P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.

6.      At any given moment and depending on the particular P2P network involved, anywhere from thousands to millions of people, either across the country or around the world,

2



unlawfully use the P2P network to upload (distribute) or download (copy) copyrighted material. The P2P systems represent a "viral" distribution of digital files: each user of the system who copies a digital file from another user can then distribute the file to still other users and so on, so that almost-perfect copies of an infringing file can be distributed to millions of people worldwide with breathtaking speed. Significantly, a person who uses a P2P network is free to use any alias (or "network name") whatsoever, without revealing his or her true identity to other users. Thus, while Plaintiffs can observe the infringement occurring on the Internet, they do not know the true names or addresses of those individuals who are committing the infringement

7.     Because the Plaintiffs have not authorized their copyrighted motion pictures to be copied or distributed in unsecured formats by means of P2P networks, the copying and distribution of these motion pictures on P2P networks violates the copyright laws.

### Plaintiffs' Identification of the Doe Defendants

8.     In order to assist Plaintiffs in combating copyright infringement on P2P networks, the MPAA and counsel for Plaintiffs retained MediaSentry, a company that provides online anti-piracy and copyright protection services and investigations through sophisticated technology and especially developed software programs. (See Decl. of Thomas Carpenter.) Under the direct supervision of counsel, MediaSentry caused searches of several P2P networks to be conducted for infringing copies of motion pictures whose rights are owned by Plaintiffs. The search function of the P2P network was used to look for network users who were offering for distribution audiovisual files that were labeled with the names of certain of Plaintiffs' copyrighted motion pictures. Also under the direct supervision of counsel, MediaSentry conducted a review of the data contained in logs obtained from the servers of certain P2P networks. MediaSentry determined from these logs those network users who were offering for distribution audiovisual files that were labeled with the names of certain of Plaintiffs' copyrighted motion pictures. When a network user was located, either through use of the search function of a P2P network or from a review of the logs from the server of a P2P network, who was making such files available for distribution, MediaSentry downloaded and retained both the

3

files that were being offered for distribution and other specific information in order to confirm that infringement was occurring and to identify the infringer. (See Decl. of Thomas Carpenter.) In addition, the downloaded audiovisual files were reviewed in order to confirm that the files were in fact copies of substantial portions of motion pictures whose rights are owned by Plaintiffs. (See Decl. of R. Christopher Harshman.)

### The Need For Expedited Discovery

9.      Obtaining the identity of copyright infringers on an expedited basis is critical to prosecution of this action and stopping the continued infringement of Plaintiffs' copyrighted motion pictures.

10.     Without expedited discovery, Plaintiffs have no way of serving Defendants with the complaint and summons in this case. Plaintiffs do not have Defendants' names, addresses, e-mail addresses, or any other way to identify or locate Defendants.

11.     Further, service providers have different policies pertaining to the length of time they preserve "logs" which identify their subscribers. Despite requests to preserve the information, some ISPs keep log files of their subscribers' activities for only limited periods of time -- sometimes as little as weeks or even days -- before erasing the data they contain. If an ISP does not have to respond expeditiously to a discovery request, the identification information in that ISP's logs may be erased.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___May 31___, _05_, at ___Encino, CA___.

_____
Chad Tilbury

4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; SONY PICTURES HOME ENTERTAINMENT INC., a Delaware corporation; COLUMBIA PICTURES INDUSTRIES, INC., a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; and TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation,<br><br>                    Plaintiffs,<br><br>     v.<br><br>DOES 1 - 29,<br><br>                    Defendants. | Civil Action No.: |

## DECLARATION OF THOMAS CARPENTER IN SUPPORT OF PLAINTIFF' MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

I, Thomas Carpenter, declare:

1.     I am Director, Data Services for MediaSentry, Inc. ("MediaSentry"), where I have been employed since January 2005. MediaSentry is a leading provider of online anti-piracy services for the motion picture, music, game and business software, and print publishing sectors. Before my employment with MediaSentry, I held various senior level positions at companies that developed Internet based technologies and have approximately ten years of experience related to the protocols, technical architecture and operation of the Internet.

2.     I submit this declaration in support of Plaintiffs' Motion for Leave to Take Discovery Prior to Rule 26(f) Conference. This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

3.     MediaSentry has developed a technology platform that provides an effective means to detect unauthorized distribution of digital music, software, games, content, and movies over online media distribution systems, or "peer-to-peer" ("P2P") networks. At MediaSentry, I am the head of the department that carries out evidence collection and provides litigation support services. I work closely with our development team to create credible techniques to scan for, detect, and download copies of copyrighted material on multiple network protocols for use by copyright owners.

4.     MediaSentry was hired on behalf of Plaintiffs to monitor and identify copyright infringement of specified motion pictures on P2P networks. Under direct supervision of Plaintiffs' counsel, we engaged in a specific process utilizing specially designed software and other technology to identify direct infringers of Plaintiffs' copyrights on P2P networks.

5.     Plaintiffs provided us with a list of copyrighted motion pictures they believe may be offered for distribution on P2P networks.

6.     All of the users named as Doe Defendants were identified in one of two ways. We either: (1) searched for files corresponding to one of the motion picture titles on the list provided by the Plaintiffs and then identified the users who are offering the files; or (2) reviewed server logs obtained from P2P networks to determine the users who were offering the files. In the first identification method, we use the same core technical processes that are used by the P2P users on each respective network to identify users who are offering the specified motion picture files on the network, or to directly locate the specified files. In the second identification method, we reviewed the same data that would be available to the operator of a server that is part of the P2P network. Under the first method of identification, any user of a P2P network can obtain the information that is obtained by us from the P2P network. Under the second method of

2

identification, any operator of a server that is part of the P2P network can obtain the information that is obtained by us from the P2P network.

7.      Once our searching software program identifies a file that it being offered for distribution that corresponds to one of the titles on the provided list of copyrighted motion pictures, or once such a file is identified directly from our search or our review of server logs, we obtain the Internet Protocol ("IP") address of a user offering the file for download. When available, we also obtain the user's pseudonym or network name and examine the user's publicly available directory on his or her computer for other files that lexically match the motion pictures on Plaintiffs' list. We then download at least one motion picture that the user is offering. In addition to the file of the motion picture itself, we download or otherwise collect publicly available information about the network user that is designed to help Plaintiffs identify the user. Among other things, we download or record for each file downloaded: (a) the time and date at which the file was distributed by the user; (b) the IP address assigned to each user at the time of infringement; and, in some cases, (c) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file. We then create evidence logs for each user that store all this information in a central database.

8.      An IP address is a unique numerical identifier that is automatically assigned to a user by its Internet Service Provider ("ISP") each time a user logs on to the network. Each time a subscriber logs on, he or she may be assigned a different IP address. ISPs are assigned certain blocks or ranges of IP addresses. ISPs keep track of the IP addresses assigned to its subscribers at any given moment and retain such "user logs" for a limited amount of time. These user logs provide the most accurate means to connect an infringer's identity to its infringing activity.

9.      Although users' IP addresses are not automatically displayed on the P2P networks, any user's IP address is readily identifiable from the packets of data being exchanged. The exact manner in which we determine a user's IP address varies by P2P network.

3

10.    An infringer's IP address is significant because it is a unique identifier that, along with the date and time of infringement, specifically identifies a particular computer using the Internet. However, the IP address does not enable us to ascertain with certainty the exact physical location of the computer or to determine the infringer's identity. It only enables us to trace the infringer's access to the Internet to a particular ISP and, in some instances, to a general geographic area. Subscribing to and setting up an account with an ISP is the most common and legitimate way for someone to gain access to the Internet. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet.

11.    Here, the IP addresses identified enable us to determine which ISP was used by each infringer to gain access to the Internet. Publicly available databases located on the Internet list the IP address ranges assigned to various ISPs. However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. Since these ISPs consequently have no direct relationship -- customer, contractual, or otherwise -- with the end-user, they are unable to identify the Doe Defendants through reference to their user logs. The intermediary ISPs' own user logs, however, should permit identification of the Doe Defendants.

12.    Here, we determined that the Doe Defendants here were using America Online, Inc. ("AOL") to gain access to the Internet and distribute and make available for distribution and copying the copyrighted motion pictures identified. We downloaded the motion picture file and other identifying information described above and created evidence logs for each Doe Defendant. Once we identified the ISP used by the Doe Defendants to gain access to the Internet from the IP address, Plaintiffs' counsel, using the MediaSentry application, sent an e-mail to the relevant contact at AOL informing AOL of the Doe Defendant's IP address and the date and time of the infringing activity. That e-mail message requested that AOL retain the records necessary to identify its subscriber who was assigned that IP address at that date and time. Once provided with the IP address, plus the date and time of the infringing activity, the Doe Defendant's ISP

4

quickly and easily can use its subscriber logs to identify the name and address of the ISP

subscriber who was assigned that IP address at that date and time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __June 1__ , __2005__ at __Morristown, NJ__

Thomas Carpenter

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; SONY PICTURES HOME ENTERTAINMENT INC., a Delaware corporation; COLUMBIA PICTURES INDUSTRIES, INC., a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; and TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>DOES 1 - 29,<br><br>          Defendants. | Civil Action No.: |

## DECLARATION OF R. CHRISTOPHER HARSHMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

I, R. Christopher Harshman, declare:

1.      I am a Litigation Clerk for the Motion Picture Association of America, Inc. ("MPAA"), where I have been employed since February 2002. The MPAA is a trade association whose members include the largest motion picture studios in the United States. Among other things the MPAA does on behalf of its member companies is to investigate the unauthorized reproduction and distribution of copyrighted motion pictures. As a Litigation Clerk, I am responsible for identifying and investigating on-line piracy of motion pictures, including gathering evidence of on-line piracy to support outside counsel's enforcement efforts. I submit

this declaration in support of Plaintiffs' Motion for Leave to Take Discovery Prior to Rule 26(f) Conference.

2.      This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

3.      As part of my responsibilities at the MPAA, I have been designated to confirm that the digital files downloaded by MediaSentry are actual copies of the Plaintiffs' motion pictures. It is possible for digital files to be mislabeled or corrupted; therefore, Plaintiffs do not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and the motion picture itself.

4.      As to each motion picture identified in the Complaint, I have either watched the motion picture in a movie theater during the picture's theatrical release or I have watched a DVD or VHS copy of the motion picture provided by Plaintiffs. After MediaSentry identified the Doe Defendant and downloaded the motion pictures he or she was distributing, I accessed the downloaded files on MediaSentry's software application which stores the files downloaded. I opened the downloaded file, watched it and confirmed that it contains a substantial portion of the motion picture identified in the Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _May 31_, 2005, at _Los Angeles_.

R. Christopher Harshman

2